Hear ye, hear ye, hear ye. United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning, this is Robin Rosenbaum and along with me on today's panel we have judges Jill Prior and Lisa Branch. I want to just go through a couple of rules to make today's proceedings a little bit easier. First, we will identify ourselves. We'll try to remember to identify ourselves when we speak. We ask that at the beginning of each time that counsel speaks, that counsel will identify himself or herself. Second, there will be announcements of when you have two minutes left in your speaking time and when your time has run. Please abide by those time announcements. If we have questions and it takes you over the time, please go ahead and answer the question. We wouldn't ask it if we didn't want to hear the answer to it. All right, with that, we will go ahead and begin. We have Tuomi v. the Secretary of the Florida Department of Corrections and the Attorney General of the Honorable Court and for the record, again, this is Attorney Arthur Wallace and my office was assigned to represent Mr. Antoine Tuomi. In a nutshell, Mr. Tuomi's case is before the court. He was sentenced on June the 17th of 2011 to a 15-year minimum mandatory sentence. He's serving that sentence and has a release date November 20 of 2024. He's been in custody since December 5th of 2009. The fly in the ointment, as it were, would be that Mr. Tuomi was originally sentenced to a two-year prison sentence on June the 1st of 2010. By way of succinctly, he was arrested on December 5th, 2009 on a charge of felony battery and criminal mischief. An original information was charged felony battery based upon bodily injury. That was filed December 31 of 2009. On May the 10th of 2010, an amended information was filed changing the felony battery charge to a felony battery under Florida law based upon prior battery convictions. The significance of that would be that the original charge was a level six under the state of Florida sentencing guidelines under 921.024. The amended charge was a level one offense. On June the 1st, Mr. Tuomi entered a guilty plea and was sentenced to two years in Florida state prison and essentially went off to do his time. On June the 30th, and I neglected to mention earlier, the public defender's office was appointed to represent Mr. Tuomi on December the 7th of 2009 and represented him up until the date of the plea, June the 1st of 2010. On June the 30th, I beg your pardon? This is Robin Rosenbaum. I think we're all familiar with the fact, so if you want to get right to the argument, then you can spend your time on that. Very good. I was going to come to the point. Thank you, Your Honor. On June the 30th of 2010, the public defender's office filed a motion to withdraw a plea, a motion to withdraw from representation and a motion to appoint conflict-free counsel. There was no original notice of appeal filed. I would submit to the court that that motion would have been timed. It was within 30 days of the judgment, which was June the 30th. Essentially, the motion alleged in a nutshell that the score sheet that was relied upon at the time of the plea and the sentencing was incorrectly computed, which is accurate and true. The score sheet reflected a level six felony battery, which scored an amount of 36 points. The corrected score sheet should have only been six points. Mr. Tuomi ended up with 30 extra points, which subjected him to a mandatory state prison sentence under 921.0242 as computed of anything between roughly 14 months and five years. That was really the gravity of the case. The motion to withdraw was filed pursuant to 3.170L Florida Rules of Criminal Procedure. Mr. Wallace, this is Jill Pryor. Let me interrupt you and just tell you what I think is the heart of the case. I am concerned that the state post-conviction court and the federal magistrate judge misapprehended the nature of Mr. Tuomi's claim. I think I agree with you that Mr. Tuomi was entitled to conflict-free counsel to navigate his proceedings once he realized that his trial counsel had participated in the sentence miscalculation that you've been talking about. I'm worried that the error might have been harmless under any standard of review. The state argues that under Florida law, specifically case law, a Rule 3.800 motion fails as a matter of law when a defendant enters into a negotiated plea agreement that's based on an incorrectly calculated sentence. I didn't see a response to that argument in your reply brief. Can you tell us what your response is? Well, under Rule 3.800, the Rule 3.800B motion would have been the appropriate remedy in the first place because 3.800B specifically states that the motion is to correct a sentencing error or an illegal score sheet. Under those circumstances, it couldn't possibly be harmless error because the 30-day time period is a critical stage during which the client, Mr. Tuomi, would have been entitled to conflict-free counsel in order to deal with either the Rule 3.800 motion or the Rule 3.179 motion that was actually filed. When you read out of these rules, it looks like the public defender was on point there with regard to the original motion because the case they cited, the Shriver case, which was cited in my brief as well, clearly indicates that conflict-free counsel is necessary where you have an allegation concerning the representation by the first counsel. It also cites the Padgett case, which indicates the conflict-free counsel is required there as well. How do we distinguish the cases the state, which says that a defendant is not entitled to relief under Rule 3.800B because, and I'm quoting, score sheet errors are considered harmless when a sentence is the result of a negotiated plea agreement? I would argue that it is not harmless error because if it were a case, you would never end up where there would be a situation where any relief would be entitled if it's a negotiated plea. The real issue is what was the quality of the representation during the negotiation of the plea and clearly the defenders admitted in their motion that they were ineffective during that time period. I'm just not sure how that could possibly be harmless error in light of what the Shriver and the Padgett cases require when it clearly indicates that whether there's a negotiated plea or not, 3.170L is a critical stage in the criminal proceeding and it would be hollow indeed if the defendant were not allowed the guiding hand of counsel to assist in preparing the initial motion to withdraw the plea. I would submit that that would apply to 3.800 as well. Counsel, two minutes, please. Yes, thank you. The record is a little muddy because the original motion was filed by the defenders. It was denied on July the 9th by the court and then there were two additional motions that were filed to vacate the plea and then there were two 3.800 motions that were filed to vacate the plea. Under those circumstances, I would submit to the court that it's clear that there was a counsel issue throughout this litigation and to essentially say that notwithstanding what Shriver holds, that the absence of conflict-free counsel, which I submit would have cured the issue completely at the trial level. Mr. Wallace, this is Jill Pryor. Let me ask you a slightly different question but related. Yes. Our case law, specifically Reynolds v. Chapman, says that Mr. Twomey has to show that the conflict had an adverse effect on him and in light of Ruff and the related case law, how can you show that, I mean, the showing that you have to make is that the counsel's know how in light of Ruff and the other case, you could make that showing? Well, here it is in a nutshell. Reynolds v. Chapman was a trial case involving a public defender's office where you had multiple conflicts with multiple co-defendants and it was at the end of the case and essentially there was some refraining of making allegations in one motion for a new trial to protect another co-defendant. That's a very, very specific, narrow fact pattern. In this particular case, the alternative strategy would have been instead of filing a 3179 motion, we would have been to file a 3800 motion. The court would set a calendar call, order response, and ultimately would correct the score sheet. And then at that point in time, the court would have the option to re-finance Mr. Twomey under the sentencing statute 921.024. However, the court saw fit. Unfortunately, that never happened. Thank you, your honors. Thank you, counsel. If you want to just conclude, that's fine. Yeah, the bottom line is everything was going okay under the 3179 motion. That refers you to Rule 9.140. It's when you read Federal Rule of Appellate Procedure 9.140, it refers you back to 3800. So under either avenue of relief, under the Schreiber case, before the court could consider the motion for retrial or resentencing, I'm sorry, to vacate the plea or resentencing, conflict-free counsel was required. Thank you. Thank you, counsel. All right, we'll hear from Mr. Napadano. May it please the court, my name is Luke Napadano. I'm an assistant attorney general, and I represent the appellee in this case, the Secretary of the Florida Department of Corrections. Your honors, Mr. Toomey must meet a demanding standard in order to obtain relief from his 15-year sentence. He must show that his Sixth Amendment rights were violated by having a counsel who was in actual conflict of interest with his interest, and that conflict of interest adversely affected his lawyer's performance. Moreover, he must show that it was unreasonable for the state trial court to find that there was no actual conflict or no adverse effect from any conflict. Here, there was no actual conflict of interest or impairment of interest between Toomey and his public defender, Ms. Pagan. Ms. Pagan admitted that she made a mistake in accepting the state's Toomey had the right to withdraw his plea. Mr. Toomey then got up, argued that he accepted the plea based on the incorrect advice from his score sheet, and asked the trial court for a trial. There was no actual conflict of interest. They both agreed the mistake had been made, advising Toomey based on an incorrect score sheet, and they both agreed Mr. Toomey was creating an actual conflict. There's no plausible alternative defense strategy or tactic other than to withdraw the plea. A competent conflict-free counsel would not have advised Toomey to choose a motion to correct a legal sentence or a motion to correct sentencing error under Rules 3800A or for a relief under either of those rules. In Florida, an illegal sentence is the kind of punishment that no judge under the entire body of the sentencing statutes could possibly inflict under any set of factual circumstances. At the time of the motion to withdraw a plea, Mr. Toomey was charged with a third-degree felony, felony battery, with a maximum sentence of five years. The sentence of two years in prison was not an illegal sentence at that time. Even under a revised score sheet, Mr. Toomey could still have been sentenced to prison, even if the score was under 22 points, because at the time, the trial court could have found him a danger to the public. I would also point out that at the motion to withdraw hearing, the prosecutors stated that he would not have agreed to a non-prison sentence for Mr. Toomey because he was violent history. Further, a sentence imposed pursuant to a plea bargain in this state is not considered a legal sentence if it exceeds the sentencing guidelines, as long as it does not exceed the statutory maximum under Ruff and under Quarterman v. State. As the Fourth District Court of Appeal, the state of Florida, found in Williams, if a negotiated plea agreement is entered based on an incorrect score sheet, the only avenue for relief is to withdraw the plea. Now, Mr. Toomey has also argued both trial court error and ineffective assistance of appellate counsel on this claim, but the standard is essentially the same. Under Florida law, trial court is not required to appoint conflict-free counsel unless an adversary relationship exists. And as the Fourth District Court of Appeal held in Tommy v. State, no conflict-free counsel is required when the defense counsel essentially admits they're ineffective and the defendant is granted relief. Thus, there is no reasonable likelihood that appellate counsel would have prevailed if he or she had raised this issue on appeal. If there are no questions for me on any of these... Mr. Napadano, this is Jill Pryor. I do have a question for you. Was the State 3850's court ruling on Mr. Toomey's denial of conflict-free counsel a summary decision, or was it a reasoned decision that basically incorporated and referred to the state's reasons? That it had advanced. It was a reasoned decision that incorporated the state's response. Okay. Thank you. So, yeah, under Wilson, you would have to find that that particular reason was unreasonable. That particular decision was unreasonable. Application of Courier under unreasonable application of Strickland. Are there no other questions on that issue? I will address the Feretta issue. At this, it's the state's position that it's not an unreasonable application of counsel that Feretta was violated in this case. Before being allowed to waive the right to counsel, the defendant must be made aware of the dangers and disadvantages of self-representation so that the record will establish he knows what he was doing and his choice was made with eyes open. That's from Feretta. In U.S. v. Kimball, this court held the court should inform a defendant of the nature of the basic trial procedure and the hazards of representing himself. There is no requirement under Feretta or any other case that specific questions must be asked. I realize, the appellee realizes that there's no model Feretta inquiry held in this case, but the record reflects that the trial court informed the defendant of the nature of the charges against him, possible punishments, basic trial procedure, and the hazards of counsel. Counsel, this is Lisa Branch. I had a question about that. In part of the dialogue between the trial court judge and Mr. Toomey, the judge said that Toomey previously convinced him that he was familiar somewhat with the system and was sincere in his request to proceed pro se, and that statement suggests there may have been prior conversations between Toomey and the court. Is there anything in the record that supports that proposition? I could find no other hearing in this case that was held where Toomey was interrogated by the trial court. I believe it's my position that the trial court is possibly referring to either the motion to withdraw plea hearing or his written pleadings. Mr. Toomey filed a written motion to discharge the third person who was appointed to him, Mr. Marshall, and he cited bar rules to that, and then he filed a written waiver of representation and then amended it to comply with the rules. That shows that Mr. Toomey could read and it's our position that the trial court could take that into account in determining whether Toomey could represent himself. Now, in his brief, Mr. Toomey argues that under Fulbright case law, the trial court was required to request to ask certain questions, but at the time that the appellate briefs were filed in Toomey's direct appeal, which was 2011, the Florida Supreme Court held in McRae versus State that what matters not is not the words the trial court employs, but rather that the record reflects the defendant who makes a knowing and voluntary waiver of counsel, and held that trial courts were not required to follow a word-for-word model colloquially. In this case, the trial court prior to trial explained to Mr. Toomey that they were about to start juror qualification and explained to him how that worked. The trial court told Mr. Toomey that a lawyer would know how to conduct FORDAR, would also know how to get witnesses, questioned the witnesses, and advised Mr. Toomey on whether witnesses would testify or not. The trial court also told Mr. Toomey a lawyer would know the rules of evidence when no one would object. The trial court warned Mr. Toomey that it was a bad idea not to have a lawyer. Mr. Toomey asked what he was charged with, and the prosecutor explained to Mr. Toomey what he was charged with. He was charged with aggravated battery, that there was photographic evidence against him, and that the aggravated battery was based on Mr. Toomey beating the victim and causing a scar above her eye. During trial, Toomey recognized the difference between aggravated battery and felony battery was the intent element of the crime, because aggravated battery requires an intent to cause great bodily harm, while felony battery only requires great bodily harm to be Based on this record, it's the appellee's view that Mr. Toomey cannot establish it was an unreasonable application of Furedo or Strickland to deny this claim. That is my presentation in this case. If there are no other questions, the appellee would ask that you affirm the judgment of the district court. Thank you, counsel. Mr. Wallace, you have five minutes of rebuttal. Yes, hello, can you hear me? Yes. Okay. By way of rebuttal, the argument that is presented that there's no conflict between the public defender and Mr. Toomey at the time, during that 30-day time period after his original judgment was entered, is to simply be lied by the record. On page 6 of the August 27th hearing transcript, and I actually have to agree with the prosecutor in this particular instance at line 8, the prosecutor interrupts, judge, if I may interrupt, I don't agree that the plea should be vacated. I just agree he's entitled to an evidentiary hearing regarding the voluntariness of his plea, and I don't think it's appropriate for Ms. Pagan to stay on the case, so I think the right thing to do is to appoint conflict-free counsel and set up for another hearing, and then we can decide if his plea is voluntary or not. And then on page 9 of the transcript, beginning at page 10, there's clearly a conflict between counsel and defendant at this moment. The defender begins, if we are going to have an evidentiary hearing, I would like to have it be as quickly as possible, as Mr. Audrivana was co-counsel during the trial and was present during the communications between me and my client when he took the plea, and he can testify as to any alleged coercion. So you have a lawyer who's in court with the client who has a witness there, essentially to offer testimony against the client, and then on top of that, you have these Schreiber and Padgett decisions, which clearly require conflict-free counsel to be appointed at that moment in order to advise the defendant. But, Mr. Wallace, this is Robin Risenbaum. In that case, you know, there were evidentiary hearings held. In this case, there was no evidentiary hearing held. The court just accepted Mr. Flomey's request to go ahead and withdraw his case. There was no evidentiary hearing held. So that seems to distinguish the case. Or maybe it doesn't. Well, the danger is still there. And obviously, it turned out to be a disastrous decision for Mr. Tuomi, because instead of having a hearing and have his motion be denied or getting some advice by the same lawyer, which had the conflict that's acknowledged in Schreiber and Padgett, and then ended up ultimately representing himself after the regional counsel's office withdrew due to a conflict, and then he had another lawyer appointed who wasn't even a criminal defense lawyer. It just kind of proceeded on and on and on from there. And I get it. But even so, Mr. Wallace, you know, if we assume that the Quiler standard applies here, then Mr. Tuomi still needs to show how the conflict that Ms. Pagan had affected her decision as far as what she did while she was still representing him, which I don't see how he can do, because the conflict that she had was that she did not identify the fact that the score sheet was incorrect. But the remedy that he wanted, she said that she explained to him what would happen if she did so. And the remedy that he wanted was nevertheless to go ahead and her conflict affected the representation she gave in that instance. Well, because clearly the lawyer representing Mr. Tuomi at that moment had a conflict, because that was the whole genesis of the original motion to withdraw the guilty plea in the first place. And that motion certified there was a conflict. The motion asked for the court to substitute counsel. And so really, I think the real question you need to pose is what might have happened if another lawyer had been representing Mr. Tuomi instead of the conflict, the lawyer that had the conflict, and I would submit to the court that the result would have been very different. Unfortunately, and it kind of goes to the Faretta argument, it didn't really seem like when the court was inquiring. Also, what do you think the result would have been if somebody without a conflict had been representing Mr. Tuomi at the time that his guilty plea was withdrawn? I believe he would have, because he was on appeal, he had filed an appeal of the original July 9th order denying the motion that under Rule 9.140, the appellate court would have construed the 3800 motion as a motion to correct a student under Part B of the rule. It would have sent the case back and there would have been a hearing. And there was no hearing, there was no anything on that. And that would be the real difference. Right. But then that gets us back into the problem that Judge Pryor asked you about earlier, which is, had that occurred, the case law in Florida states that when there is a negotiated plea, it doesn't matter if this court sheet is wrong, right? It doesn't matter if the court doesn't allow or authorize a prison sentence. If there's a negotiated plea, that will be respected. Did you have a specific response to that? I'll let you give your response in a very brief closing since we've gone over time. Well, it would seem to me that if that were the case and there was no remedy available, then the motion should have just been denied. He should have been sent back to prison to finish doing his two years. Perhaps the issue is the remedy. And if there was no, if the deal was already closed at that moment because it was a negotiated plea, then the court should have just denied the motion. But these are things that didn't happen because there was no conflict-free counsel appointed. And unfortunately, the defender had a conflict. They admitted the conflict. They acknowledged the conflict. And they asked for a lawyer to be appointed. Even the prosecutor asked for a lawyer to be appointed. And instead, the judge just turns to the prosecutor and says, you want to have a trial? And she says, yes. And that's what happened. And then it was a disaster from that moment forward. All right. Thank you very much, Mr. Wallace. And we note that you were appointed and you accepted the appointment. We very much appreciate that. It's my pleasure, Your Honor. My pleasure. Thank you. Everybody stay well. We'll go ahead, we'll take the case under advisement, and we will be in recess. Thank you all. Bye-bye.